UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| LISA MAKSON<br>*on behalf of herself and those similarly situated*<br><br>Plaintiffs<br>v.<br><br>PORTFOLIO RECOVERY ASSOCIATES, LLC<br><br>Defendant | :<br>:<br>:<br>:<br>:  Civil No. 3:07cv582<br>:<br>:<br>:<br>: |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANT'S MOTION TO STRIKE MEDIATION AGREEMENT
AND IN SUPPORT OF PLAINTIFF'S MOTION TO ENFORCE
MEDIATION SETTLEMENT AGREEMENT**

COMES NOW the Plaintiff, Lisa Makson, for herself and on behalf of all other similarly situated individuals, by counsel, and as for her Memorandum in Opposition to Defendant's Motion to Strike Mediation Agreement and in Support of Plaintiff's Motion to Enforce Mediation Settlement Agreement, she states as follows:

***OVERVIEW***

This class case settled after multiple mediation stages with Magistrate Judge Dohnal. The parties negotiated, drafted and executed a Settlement Agreement (Def. Mem. Exhibit "A") on the spot – in fact Defense counsel did so having brought his laptop to the settlement conference for that purpose. Both sides argued about and then compromised specific words in the agreement. However, after the agreement was completed and signed, Defendant had second thoughts and apparently made a determination that he settlement would be more favorable to the class (and more expensive to Defendant) than it originally calculated. Though the settlement

requires the parties to jointly move to certify a settlement class and certainly would bar Defendant from opposing such a motion, Defendant now claims that there never was a settlement and that the document entitled "Mediation Settlement Agreement" was not intended to settle this case.

This Court adjudicates as many cases in a year as Plaintiff's counsel may litigate in a lifetime, and thus is often called upon to unwind contracts of considerably greater complexity than the one at issue here. Still, Plaintiff's counsel has absolutely no idea how this Defendant can pass the red face test and argue that a document drafted nearly entirely by Defendant's counsel on his laptop, titled "Mediation Settlement Agreement" by the Defendant, and expressly stating in its opening paragraph that, "On January 15, 2007, the *Makson v. Portfolio* case was settled" could be interpreted as anything other than an expression of the intent of the parties that this case is settled. Such a position can only be seen as a bald-faced attempt to back out of settlement and vexatiously protract this litigation, merely the Defendant had a change of heart regarding the terms of a settlement agreement that it negotiated, drafted, and executed and which it now feels was not as great of a deal for itself as it might have otherwised hoped.

The docket in this District works for a number of reasons. Certainly one of them is the process established to facilitate settlement. This Court routinely orders the parties to a settlement conference with a federal Magistrate Judge. In most cases, both Judge Dohnal and Judge Lauck require any settlement reached in the mediation to be reduced to writing on the spot in order to avoid just the type of problem now faced by the Plaintiff (and this Court). Judge Dohnal followed this process in the present case and even permitted Defendant's counsel to bring his laptop computer into the Courthouse so that this could be accomplished. Independent of the impact on this case, Plaintiff's counsel is concerned about the 'big picture' effect of Defendant's

2

attempt to ignore and avoid a signed settlement agreement. If this agreement is not enforceable, then in other cases the more ordinary and less detailed settlement documents actually drafted and typed by the Magistrate Judges or their assistants may also then become useless.

Plaintiff's counsel has now litigated and settled more than eight class action cases in this District, and all but one in this Division. The claims were uniform, involved a large number of consumers, which would have made individual litigation burdensome on the Court had they proceeded separately, and were reasonably negotiated between all parties to come up with a fair settlement. In each case, the settlement was approved by the Court and a settlement class was certified. No meaningful objection has ever been filed. None of the handful of *pro se* objections were sustained (or even litigated by the *pro se* party). In none of these cases has Plaintiff's counsel faced a circumstance as in this case where the Defendant negotiated a class settlement, drafted and executed a settlement agreement and then, after recalculating the consideration to be paid to the class, then tried to back out of and abandon the settlement. This is the remarkable posture in which Plaintiff's counsel now find themselves. They offer this overview with express apology to the Court. The District Court and the Magistrate Judge have invested nearly as much time into the mediation process and consideration of the case merits, as have Plaintiff's counsel.

## *ARGUMENT*

I. **THIS CASE IS SETTLED.**

The law strongly favors the enforcement of settlement agreements, voluntarily entered into between two parties. This Court has explained,

> The solemnity with which the federal courts approach settlement agreements cannot be overstated. On that point, it has been said that:
>
> Agreements settling litigation are solemn undertakings, invoking a duty upon the involved lawyers, as officers of the court, to make every reasonable effort to see that the agreed terms are fully and timely carried out. Public policy strongly

> favors settlement of disputes without litigation. Settlement is of particular value in patent litigation, the nature of which is often inordinately complex and time consuming. Settlement agreements should therefore be upheld whenever equitable and policy considerations so permit. By such agreements are the burdens of trial spared to the parties, to other litigants waiting their turn before over-burdened courts, and to the citizens whose taxes support the latter. An amicable compromise provides the more speedy and reasonable remedy for the dispute.
> *Aro Corp. v. Allied Witan Co.,* 531 F.2d 1368, 1372 (6th Cir.1976); *see also Hemstreet v. Spiegel, Inc.,* 851 F.2d 348, 350 (Fed.Cir.1988) ("The law strongly favors settlement of litigation, and there is a compelling public interest and policy in upholding and enforcing settlement agreements voluntarily entered into.")

*Silicon Image, Inc. v. Genesis Microchip, Inc.*, 271 F.Supp.2d 840, 846 (E.D. Va. 2003). It is unquestionable that District courts have inherent authority, to enforce settlement agreements on the terms agreed between the parties. *Bradley v. American Household Inc.*, 378 F.3d 373, 380 (4th Cir. 2004); *Hensley v. Alcon Labs., Inc.*, 277 F.3d 535, 540 (4th Cir.2002) (citing *Millner v. Norfolk & W. Ry. Co.*, 643 F.2d 1005, 1009 (4th Cir.1981)). As stated in *Hensley*, the Court may summarily enforce the agreement if the material terms are known and agreed:

> Thus, if an agreement for complete settlement of the underlying litigation, or part of it, has been reached and its terms and conditions can be determined, the court may enforce the agreement summarily as long as the excuse for nonperformance of the agreement is "comparatively insubstantial." *Millner*, 643 F.2d at 1009 (quoting *Autera v. Robinson*, 419 F.2d 1197, 1200 (D.C.Cir.1969)).

*Hensley v. Alcon Labs., Inc.*, 277 F.3d at 540-541. "[H]aving second thoughts about the results of a valid settlement agreement does not justify setting aside an otherwise valid agreement." *Young v. FDIC*, 103 F.3d 1180, 1195 (4th Cir.1997).

While it has expressed its position in multiple headings, Defendant's single argument in its memorandum as to enforceability is this: *The Settlement Agreement was not a complete agreement because there remained numerous items that still had to be worked out and negotiated before the settlement could be implemented.* It again and again restates this

position in various forms: (1.) "The Agreement is unenforceable because it is merely an 'Agreement to Agree'" (Def. Mem. p.7); (2.) "The Agreement is unenforceable because the Parties did not agree on all material terms and settlement documents" (Def. Mem. p.9); (3.) "The language of the Agreement requires further negotiation" (Def. Mem. p. 13); (4.) "There are numerous open terms" *Id.*; (5.) "The context of the settlement negotiations was such that everyone understood that no 'final deal' was reached – additional work was necessary" *Id.*; and (6.) "When settling a class action, customarily the parties and their lawyers sign a formal class action settlement agreement" (Def. Mem. p.14). Still, in each of the forms in which they are regurgitated and rephrased, the Defendant's "arguments" simplify to a single position. Because there are additional documents that have to be completed, and the Defendant now refuses to participate in drafting them, it claims that the Settlement Agreement is defective and cannot be enforced. There is not a single case or even a reasoned argument to support this contention.

Contrary to Defendant's belief that every word of an agreement's implementation must be stated or written within the agreement itself, only the material terms must be formally agreed. The fact that all of an agreement is not in writing does not render it unenforceable. *Hensley v. Alcon Labs., Inc.*, 277 F.3d at 540-541; Alexander *v. Industries of the Blind, Inc.*, 901 F.2d 40, 41 (4th Cir.1990). Agreements settling legal disputes are enforceable in Virginia, even when it is contemplated that a more formal written agreement will be executed and one of the parties attempts to pull out before everyone signs off on the documents. *Snyder-Falkingam v. Stockburger*, 249 Va. 376, 457 S.E.2d 36 (1995). In fact, even when an initial settlement agreement is executed that contemplates later completion of more formal papers, so long as the material terms of the contract have been agreed, the initial document is enforceable regardless of whether or not it is more formally memorialized. Unlike the "letter of intent" or partial

"statements of principles" considered in those few cases cited by Defendant finding an earlier document incomplete, the "Settlement Agreement" in the present case expresses the intent of both parties to become bound, stating clearly that the "case was settled." Under such circumstances in which the parties have actually reached final terms of an agreement or conveyed detailed offers that were accepted, later memorialization by a more elaborate document is unnecessary to form a contract. *See e.g. Galloway Corp. v. S.B. Ballard Construction Co., et al.,* 250 Va. 493, 496, 464 S.E.2d 349, 351 (1995); *Snyder-Falkinham v. Stockburger,* 249 Va. 376, 379, 457 S.E.2d 36, 38 (1995); *Marefield Meadows, Inc. v. Lorenz,* 245 Va. 255, 258-9, 427 S.E.2d 363, 364-5 (1993); *North American Managers, Inc. v. Reinach, 177 Va. 116, 118-9, 12 S.E.2d 806, 806-7 (1941)*).

The general rule is that an oral or informal agreement that is otherwise complete as to its material terms is effective even if the Parties contemplated a later more formal memorialization. This unremarkable legal principle is explained in a 1946 American Law Reports annotation that has remained unchanged even through its 2008 supplementation:

> [T]he mere fact that parties to an oral or informal agreement intend that the same shall be reduced to a written or more formal contract will not necessarily prevent present, binding obligations from arising, notwithstanding the contemplated written or formal contract is never drawn up and executed, if the agreement is finally assented to by the parties and covers fully and definitely the terms of the contract; or, as some of the cases, in effect, state the rule, the mere intention to reduce an oral or informal agreement to writing, or to a more formal writing, is not of itself sufficient to show that the parties intended that until such formal writing was executed the parol or informal contract should be without binding force. . . . As stated in the earlier annotation, if parties to negotiations who have reached a clear and definite understanding desire merely that a writing or more formal instrument shall be drawn up as a convenient memorial or evidence of their contract already made, its absence, under the rules already stated, will not affect the binding force of the contract.

*Formal or Written Instrument as Essential to Completed Contract where the Making of Such Instrument is Contemplated by Parties to Verbal or Informal Agreement*, 165 A.L.R. 756

(1946)(2008 Supplement). The Fourth Circuit has also considered this exact issue and has summarized the governing law as follows:

> While bare-boned "agreements to agree" are not binding, courts have recognized two kinds of preliminary agreements that are binding and enforceable. Judge Leval, in his well-reasoned and often cited decision, *Teachers Insurance and Annuity Assoc. of America v. Tribune Co.,* 670 F.Supp. 491 (S.D.N.Y.1987), <u>recognized the importance of enforcing and preserving agreements that were intended as binding, despite a need for further documentation or further negotiation. *Id.*</u> at 498. A <u>Type I agreement, the "fully binding preliminary agreement," occurs when parties have reached a complete agreement (including the agreement to be bound) on all issues perceived to require negotiation. *Id.* Such an agreement is preliminary only in form-only in the sense that the parties desire a more elaborate formalization of the agreement. *Id.* "The second stage is not necessary; it is merely considered desirable." *Id.*</u>
> . . .
> <u>Type I agreements bind parties to their ultimate contractual objective in recognition that a contract was reached, despite the anticipation of further formalities</u>. *Id.* Type II agreements do not commit the parties to their ultimate contractual objective. Rather, they commit the parties to negotiate the open issues in good faith in an attempt to reach the contractual objective within the agreed framework. [FN1] *Id.* Under this duty to negotiate in good faith, a party is barred from renouncing the deal, abandoning the negotiations, or insisting on conditions that do not conform to the preliminary agreement.[FN2] *Id.* . . . Type I fully binding preliminary agreements are not unlike oral agreements that are meant to be formalized at a later date.[FN3]
> . . .
> FN3. Parties who plan to make a final written instrument as the expression of their contract necessarily discuss the proposed terms of the contract before they enter into it and often, before the final writing is made, agree upon all the terms which they plan to incorporate therein. This they may do orally or by exchange of several writings. It is possible thus to make a contract the terms of which include an obligation to execute subsequently a final writing which shall contain certain provisions. If parties have definitely agreed that they will do so, and that the final writing shall contain these provisions and no others, they have concluded the contract. Restatement (Second) of Contracts § 27 cmt. a (1981).

*Burbach Broadcasting Co. of Delaware v. Elkins Radio Corp.*, 278 F.3d 401, 407-408 (4th Cir. 2002) (Emphasis added).

In its argument, Defendant discounts the Fourth Circuit's reasoning in *Burbach Broadcasting* claiming it inapplicable because Virginia law does not recognize a "Type II"

7

agreement that is merely an "Agreement to Agree." (Def. Mem. p. 12 *citing Beazer Homes Corp. v. VMIF/Anden Southbridge Venture*, 235 F.Supp.2d 485 (E.D. Va. 2002)). This effort is misplaced for two reasons. First, whether or not Virginia common law recognizes a Type II contract, for the reasons explained *infra*, the Settlement Agreement in this case is clearly more than a mere Type II "Agreement to Agree." Second, even if the Court were to conclude that the present Settlement Agreement includes <u>material</u> terms that have yet to be negotiated, it would still apply <u>federal</u>, not Virginia, common law to accept the Type II agreement as a contract. *Silicon Image, Inc. v. Genesis Microchip, Inc.*, 271 F.Supp.2d at 847-848. As in *Silicon Image*, the present case is not a diversity claim, but instead arose upon a violation of a federal statute. As Judge Payne explained:

> This dispute, however, concerns an agreement to settle an action arising under the federal patent laws. Thus, it is first necessary to determine whether the federal common law or state contract law shall provide the applicable contract interpretation principles.
> In *Gamewell Manufacturing, Inc. v. HVAC Supply, Inc.,* 715 F.2d 112, 115 (4th Cir.1983), the Fourth Circuit, directly addressing that issue in a patent infringement action, held that federal common law principles govern the standards by which federal litigation may be settled. The Fourth Circuit explained, "[s]ettlements ... assertedly entered into in respect of federal litigation already in progress *implicate federal procedural interests distinct from the underlying substantive interests of the parties ... [, so that] the standards by which that litigation may be settled,* and hence resolved short of adjudication on the merits, *are preeminently a matter for resolution by federal common law principles,* independently derived." *Id.* (emphasis added). As a result, the Fourth Circuit found it proper to "apply an independently derived federal standard to govern resolution of the settlement issues raised in [that] case." *Id.* at 116. The courts in this circuit have continued to follow the *Gamewell* holding in various types of federal litigation,[FN7] including settlements in patent cases. *Commonwealth Film Processing, Inc. v. Courtaulds United States, Inc.,* 717 F.Supp. 1157, 1158 (W.D.Va.1989) (applying federal common law to a patent litigation settlement agreement that was, in essence, "a complete, fairly complicated, license agreement").

*Id. See also Pinchback v. Armistead Homes Corp.,* 907 F.2d 1447, 1453 (4th Cir.1990) (holding that the effect of the release on federal discrimination claims is a question of federal law and

8

interpreting the settlement agreement according to federal law); *In re Complaint of Eastern Shore Diving & Marine Servs.,* 845 F.Supp. 371, 374 (E.D.Va. 1994).

Accordingly, even if the Court were to conclude that the additional "work" required to implement the settlement was a material term and required further negotiation to complete the settlement, this alone would constitute a contractual obligation upon Defendant. Defendant would have a contractual obligation to work with Plaintiff to resolve the remaining implementation issues. For example, if preparation of a class notice were actually controversial and would require contentious negotiation such to be held a "Type II" contract term, then Defendant would still be obligated to work with the Plaintiff to draft such a notice.[1]

Still, despite the best efforts of counsel in its Memorandum, Defendant cannot articulate a single material or controversial term of settlement that still requires negotiation. The few open questions are not controversial and certainly are not material. In its Memorandum, Defendant identifies several "open" issues that it claims would require additional "negotiation." All of these are questions of implementation and nearly every issue is not determinable by the parties, no matter how hard they were to negotiate, but rather by the Court. Contrary to defendant's suggestion, the content and manner of notice to the Class is not set or determined by the Parties, but rather by the Court. Fed. R. Civ. P. 23(c)(2)(B) states in relevant part:

> (B) *For (b)(3) Classes*. For any class certified under Rule 23(b)(3), **the court** must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort.

(Emphasis added). It is customary for the parties to a class settlement to draft a proposed Notice.

---

[1] In it's Memorandum, Defendant claims "PRA Negotiated in Good Faith, But was Unable to Reach a Final Class Action Settlement Agreement." (Def. Mem. p. 15). This claim is absurd. Plaintiff asks the Court to inquire of Defendant what effort it made to draft or reach agreement as to the formal settlement documents in this case. To date, it has refused to even discuss the present contract terms and has never once attempted to exchange formal documents to implement the Settlement Agreement.

However, this is similar to drafting a proposed order. It is designed to simplify the Court's efforts and workload. Court approval of a specific proposed Notice is not a material term of any class action settlement known to Plaintiff's counsel and it certainly was not so stated in the present Settlement Agreement. Additionally, drafting of a class settlement notice certainly is not a contentious or controversial task. Nearly every Class notice is modeled after the sample approved notices published by the Federal Judicial Center.[2] Similarly, Defendant is unjustifiably presumptuous to assert that the Parties would determine the content of the part of the Notice drafted as a letter from Magistrate Judge Dohnal. Not only would that part of the class notice be determined by the Court in accordance with Rule 23(c), but it also would depend not on the negotiations of two litigants, but instead on the decision of Judge Dohnal as to what to state in his letter. Regardless, this could hardly be a material term and given the fact that Defendant never even raised this issue as a problem before filing the present Motion, the issue is obviously contrived.

Similarly, issues such as "the procedure for class members to object to settlement", Procedure for class members to exclude themselves from the settlement", the content of this Court's orders and judgment and the "administration of settlement payments" are each matters solely within the control and decision of the Court. Fed. R. Civ. P. 23. The parties can advocate one form of a proposed Court Order or attempt to instruct the Court on how it should schedule or hear argument from objectors, but these are decisions solely in the Court's discretion to make. In fact, in every class settlement advocated and approved by Plaintiff's counsel in this District, the District Court judge has provided specific instructions as to how to execute the settlement within its controlled docket. This Court will certainly do so as well and not leave such drafting,

---

[2]http://www.fjc.gov/public/home.nsf/autoframe?openform&url_l=/public/home.nsf/inavgeneral?openpage&url_r=/p

scheduling and docketing decisions entirely to the will of the litigants. (Defendant also lists "the scope of confidentiality" as an open issue. Plaintiff has no idea what this means. There is not a confidentiality clause in the Settlement Agreement, nor could there be so if a public class notice is to be mailed.)

Defendant's contention is really very remarkable. The Settlement Agreement is actually detailed on many of the questions now raised by Defendant. For example, the Notice process is actually stated in some detail, including that it will be by First Class U.S. Mail and that it will be based upon the most up to date addresses known to Defendant. (Settlement Agreement ¶5). The notice details are also developed further to include details about a toll-free number, that notice will be handled by a third party administrator[3] and inclusion of an explanation letter from Judge Dohnal. (Settlement Agreement ¶7). Nevertheless, Defendant complains that not every detail is specifically stated in the agreement. But this standard would be impossible to meet in every instance. For example, if the actual proposed notice was drafted and attached as an exhibit to the Settlement Agreement, Defendant could argue that the parties had not agreed to the date that notice would actually be placed in a mailbox, or whether it would be mailed in an envelope or a folded and stapled mailing. No written document will define every detail of implementation. Not in a class case or an individual case. They never do. But an agreement can include all material terms – those that are controversial and at the core of the settlement – and this one does.

There is one final detail the Court should consider in determining whether or not the Parties contemplated the Settlement Agreement to be binding and to have resolved all matters that required negotiation. In paragraph 12, the Agreement states, "The parties will negotiate in good faith regarding class counsel's request for attorney's fees." This is the only item in the

---

ublic/home.nsf/pages/376.

Agreement that expressly contemplates additional negotiation. While this open issue is clearly segmented out of the remainder of the agreement terms, it evidences that the parties understood the need to identify this sole "still to be negotiated" item. Defendant cannot credibly argue that the implementation issues it targets also include – in silence – an implied condition that the "parties will negotiate in good faith" to resolve same.

Defendant also suggest another 'red herring' in its claim that there remains a dispute as to whether a 1099 tax form had to be provided to settling consumers. This contrived dispute is based on the language in paragraph 8 of the Settlement Agreement. Defendant now claims that the Settlement Agreement prohibits the use of 1099 filings. It does not. Instead, the paragraph expressed Defendant's agreement to research whether or not the forms were required. If they are – the Internal Revenue Service will requires them regardless of whether or not the parties agree. If they are not required, then Defendant does not send them. There is no further negotiation.[4]

## II. THE COURT SHOULD NOT STRIKE THE SETTLEMENT AGREEMENT BASED ON DEFENDANT'S MERE HOPE THAT IT WILL NOT BE PRELIMINARILY APPROVED.

Despite its contractual obligation to consent to certification, class settlement and appointment of class counsel, Defendant now attempts an end run around the agreement in hope of avoiding a formal hearing and briefing on Preliminary approval. To that extent, Defendants Rule 23(e) argument is premature and should be disregarded without comment. Plaintiff has asked the

---

[3] In every case in which Plaintiff's counsel has been involved and used a third party administrator, the selection or identification of that administrator was not stated in the agreement and was instead within the Plaintiff's discretion.

[4] Whether or not some reduction in a judgment amount is a taxable event for some consumers, a significant portion of the balances if these credit card accounts will be interest and late fees. With respect to discharge/reimbursement for any charges other than principal, see 26 CFR § 1.6050P-1(d))(2) and (3). Subsection (d) is titled "Exceptions from reporting requirement"; (2) is titled "Interest", and states: "The discharge of an amount of indebtedness that is interest is not required to be reported under this section; (3) is titled "Non-principal amounts in lending transactions", and states: "In the case of a lending transaction, the discharge of an amount other than stated principal is not required to be reported under this section." See 26 CFR § 1.6050P-1.

Court to determine that the Settlement Agreement is enforceable and then to schedule a hearing for Preliminary Approval. At that hearing, Plaintiff will properly and fully establish the elements necessary for approval of a Rule 23(b)(3) class settlement.

However, out of an abundance of caution, Plaintiff responds herein to Defendant's assertion that the negotiated settlement would be unfair or inadequate. The basis for Defendant's argument is that there may exist some disparity between the amounts received by different consumers in the class.

First, it bears noting that the present argument is made by a party – the Defendant – that would certainly prefer to pay less money in settlement rather than more. Regardless of its feigned concern for the class, Defendant's attempt to get out from under the agreement is evidence enough that the deal is better for the class than Defendant's alternatives. This raises the same irony considered by the Seventh Circuit in *Eggleston v. Chicago Journeyman Plumbers Local Union No. 130*:

> [I]t is often the defendant, preferring not to be successfully sued by anyone, who supposedly undertakes to assist the court in determining whether a putative class should be certified. When it comes, for instance, to determining whether "the representative parties will fairly and adequately protect the interests of the class," or the plaintiffs' ability to finance the litigation, <u>it is a bit like permitting a fox, although with a pious countenance, to take charge of the chicken house</u>.

657 F.2d 890, 895 (7th Cir. 1981) emphasis added. The truth behind Defendant's new found "concern" about the adequacy of the money it would be paying to the class was more candidly stated by its counsel in a March 21, 2008 email to the Plaintiff's counsel and Judge Dohnal offering as a real basis for this attempt to strike the Agreement, in which Mr. Israel revealed the true impetus behind the present motion:

> *"The current settlement creates unexpected prejudice to PRA".*

Defendant asserts two categories of class members that it claims could be harmed or who would receive inadequate consideration in the current settlement – (1.) those who have already settled their judgments; and (2.) those who dispute their indebtedness. But whether or not these consumers would have an effective opt out opportunity (they will) or whether they gain at least something from the settlement (they would), there is not any evidence that these categories of consumers even exist, let alone in significant numbers.

The Fourth Circuit has already considered such an argument and rejected it. In *Gunnells v. Healthplan Services, Inc.*, addressing a comparable adequacy argument, the Court refused to engage in invited conjecture, explaining, "To defeat the adequacy requirement of Rule 23, a conflict 'must be more than merely speculative or hypothetical.'" *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 430-31 (4th Cir. 2003).

Even if there somehow was actual evidence that one or two consumers who fit in Defendant's theoretical categories, these exceptions could be adequately protected through the opt-out process. Contrary to the New York trial court decision cited by Defendant, the law in the Fourth Circuit permits consideration of an opt-out safety-valve for the outliers in a class settlement that may not receive ideal treatment. The Fourth Circuit has explained that Rule 23(a)(3) opt out protections are not just relevant, but sufficient. *Gunnells*, 348 F.3d at 430-32 (noting that, with Rule 23(c)(2) opt out rights, "rhetoric aside, Plaintiffs with only direct claims are not being "[j]amm[ed]," "sacrificed" or "caught" in any class action against their will.").

Addressing Defendant's theoretical categories (Def, Mem. p. 22), the Plaintiff suggests the following. Class Member "A" is theoretically a consumer who suffered a $10,000 judgment and then paid it for $5,000. First, Defendant has represented the average judgment amount to be

approximately $2,500. A $10,000 judgment would be the remarkable exception. Second, Class member "A" could hardly be described as being "harmed." He may pay a net of $1,000, but in so doing he would be paying in full a $10,000 judgment.

Class Member B as well would not just "break even", but would in fact benefit similarly as to Class Member "A". For a net payment of $6,000, the class member would be free of a $10,000 judgment. Though each class member may receive different reimbursements based on the size of their respective judgments, the percentages and terms of settlement are exactly the same for each class member. (Defendant's contention as to tax liability as harm to settling class members is strange. The only way a consumer would incur tax exposure is if they received a benefit – income.)

In short, each of these arguments are raised by the Defendant as a last-ditch attempt to undo a valid settlement agreement at the expense of valuable judicial resources, including a day of Judge Dohnal's time, and unknown amount of this Court's time in considering this briefing. The "1099 argument", the "net payment argument" and the "illusory settlement argument" are all equally spurious and made toward this end. The parties have reached a valid settlement agreement in this case and the settlement fairly and adequately compensates the putative class members. This Court should put a stop to the Defendant's unwarranted and vexatious protraction of this litigation, certify a settlement class following its review of the Rule 23(a) and (b) factors, and declare the settlement agreement at issue to be valid and enforceable, despite the "unforeseen prejudice to PRA" that has driven this latest round of briefing and motions practice.

### ***CONCLUSION***

For the reasons stated herein, Plaintiff asks the Court to deny Defendant's attempt to avoid the negotiated settlement agreement and its motion to strike same. Further, Plaintiff asks

the Court to enter an order enforcing the Settlement Agreement and setting a hearing date for the Motion for Preliminary Approval.

Respectfully submitted,
**LISA MAKSON**

_____/s/_____
MATTHEW J. ERAUSQUIN, VSB#65434
*Counsel for the Plaintiff*
CONSUMER LITIGATION ASSOCIATES, P.C.
3615-H Chain Bridge Road
Fairfax, VA  22030
Tel:     703-273-7770
Fax:    888-892-3512
matt@clalegal.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 28th day of June, 2008, I have electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification to the following:

William Delaney Bayliss
Williams Mullen
1021 E. Cary St.
Richmond, VA 23218-1320
804-783-6459
bbayliss@williamsmullen.com

/s/
MATTHEW J. ERAUSQUIN, VSB#65434
LEONARD A. BENNETT, VSB #37523
*Counsel for the Plaintiff*
CONSUMER LITIGATION ASSOCIATES, P.C.
3615-H Chain Bridge Road
Fairfax, VA 22030
Tel: 703-273-7770
Fax: 888-892-3512
matt@clalegal.com