# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

|  |  |  |
|---|---|---|
| LISA A. MAKSON, | : | |
| *on behalf of herself and others similarly situated* | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL NO. 3:07cv582 |
| | : | |
| PORTFOLIO RECOVERY ASSOCIATES, LLC | : | |
| | : | |
| Defendant. | : | |

## PLAINTIFF'S REPLY BRIEF IN SUPPORT OF
## HER MOTION TO ENFORCE THE MEDIATION AGREEMENT

COMES NOW the Plaintiff, Lisa Makson, by counsel, and as for her Reply Brief in Support of her Motion to Enforce the Mediation Agreement, she states as follows:

The Plaintiff files this brief to briefly address a handful of the issues raised by the Defendant in its opposition brief, and which are appropriate for response and the Court's attention.

First, while many of the Defendant's arguments are various iterations of its core argument that the parties failed to reach agreement on material terms of the settlement agreement, it continues to advance the argument that the settlement is not fair or adequate to the class members. It does so despite that it has failed to articulate why this is so, aside from creating a hypothetical and then speculating as to why the hypothetical class member might believe the settlement would not be to his advantage.

The reality is that the terms of settlement are such that the class members who have paid the debts sued on will actually receive money back from the Defendant – 50% of the amount that they paid. By the Defendant's estimates, likely conservative, the average judgment amount was $2,500. Thus, while the FDCPA's statutory damage remedy would have provided this class member with an award of $1,000, by the terms of the agreement and the Defendant's own admission, the average "give-back"

amount would be $1,250.  This amount can hardly be characterized as unfair or inadequate.  Further, Plaintiff's counsel has repeatedly asked the Defendant to articulate exactly how much this amount would be on a class-wide basis and the Defendant has refused to provide a specific number.  It has, however, conceded that the "give-back" amount is likely at least $250,000, by the Defendant's own unconfirmed estimation.

The Court might note that the maximum possible recovery that the 3,000 member class as a whole could have received following a successful prosecution of the case is $500,000, the statutory class action cap provided for by the FDCPA.  Thus, while the Defendant would prefer to continue to maintain its unsubstantiated argument that the settlement is not fair or adequate to the class members, it has no standing to advance these arguments.  It does not represent the class and, further, it has not submitted even so much as a declaration to provide support for these arguments.  If the reality is that the current settlement agreement would require the Defendant to return at least $250,000 to the class members who have paid their judgments and to further discount the judgment amounts owed by other class members who have not yet paid the judgments, then this weighs strongly in favor of a finding of the fairness and adequacy of the settlement.  By any objective criteria, it is an outstanding result for the class members.

Next, the Defendant argues that because the agreement calls for the parties to attempt to reach an agreement regarding the form and content of the class notice, and because no agreement has yet been reached, the agreement has failed.  This argument ignores entirely that the Defendant had a responsibility to at least engage in a good faith effort to attempt to reach a consensus with the Plaintiff on the content of the class notice.  However, in its haste to attempt to avoid the settlement agreement entirely, the Defedant has refused to even engage Plaintiff's counsel in such discussions.   As stated in Plaintiff's affirmative motion, Rule 23 provides that ultimately the Court is in the position of determining which notice should be provided to the class members.  The Defendant should at least take

the preliminary step of conferring with the Plaintiff to see if such an agreement can be reached, as per the terms of the mediation agreement and before additional judicial resources are consumed unnecessarily. Thus, with this brief, the Plaintiff has provided a draft order which would require the Defendant to comply with its contractual obligation to meet and confer in good faith with the Plaintiff regarding the content of the notice. If the parties cannot reach an agreement, they would each submit a proposed notice to the Court for its ultimate adjudication.

In conclusion, this settlement was reached at the conclusion of an arms-length negotiation that the parties engaged in before Judge Dohnal over the course of a full day, following numerous prior conversations regarding settlement. The terms of the document titled "Mediation Settlement Agreement" were entirely drafted by counsel for the Defendant at the settlement conference. Once the parties had reached final agreement on the language and after changing certain terms, the parties expressly discussed that the language of the settlement agreement would likely require PRA to return a substantial amount of money to those class members that had paid their judgments. Counsel for the Defendant conferred with his client and then confirmed that they were still willing to proceed with the settlement agreement. The formal agreement was executed by the parties and their counsel.

Only weeks later, and after the parties had exchanged drafts of a motion for preliminary approval and had discussed hearing dates for the same, the Defendant then realized exactly how much money it would have to return to the class members by the terms of the agreement – the "unexpected prejudice to PRA" referenced in Exhibit B – and the Defendant then began this massive undertaking to attempt to unwind the settlement.[1] This Court should not permit the Defendant to attempt to undermine the integrity of the mediation process upon which this District heavily relies, to delay the return of the funds

---

[1] In its opposition brief, the Defendant represents to this Court that the "expected prejudice to PRA" referenced in Exhibit B was supposedly meant to pertain to the delay in accomplishing settlement, despite that this case only remains on the Court's docket due to the Defendant's actions. The Plaintiff is at a loss to reconcile the Defendant's explanation with its current position.

that are owed to the class members by the terms of the settlement agreement, or to consume additional

judicial resources merely because the Defendant has had a change of heart.  Thus, the Plaintiff moves

that the Court enter the draft order attached as Exhibit A and enforce the terms of the Mediation

Settlement Agreement.

Respectfully submitted,
**LISA A. MAKSON**


By_____/s/_____
Of Counsel

MATTHEW J. ERAUSQUIN, VSB#65434
LEONARD A. BENNETT, VSB #37523
Counsel for the Plaintiff
CONSUMER LITIGATION ASSOCIATES, P.C.
3615-H Chain Bridge Road
Fairfax, VA 22030
Telephone:     (703) 273-7770
Facsimile:     (888) 892-3511
Email:  matt@clalegal.com

### CERTIFICATE OF SERVICE

I hereby certify that on the 11th day of July, 2008, I have electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification to the following:

William D. Bayliss, Esq.
WILLIAMS MULLEN
1021 E Cary St
Richmond, VA 23218-1320
(804) 783-6459
Email: bbayliss@williamsmullen.com

_____/s/_____
MATTHEW J. ERAUSQUIN, VSB#65434
LEONARD A. BENNETT, VSB #37523
Counsel for the Plaintiff
CONSUMER LITIGATION ASSOCIATES, P.C.
3615-H Chain Bridge Road
Fairfax, VA  22030
Tel:    703-273-7770
Fax:    888-892-3512
matt@clalegal.com
